FILED

2006 Jun-13  PM 03:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **JANICE EASON, as** ] | |
| **Administratrix of the Estate of** ] | |
| **Wallace Mitchell** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | **Case No.:  5:00-cv-0969-VEH** |
| **v.** ] | |
| ] | |
| **CITY OF HUNTSVILLE, *et al*.,** ] | |
| ] | |
| **Defendants.** ] | |

---

## <u>MEMORANDUM OF OPINION</u>

The Court presently has before it the Motion for Partial Summary Judgment
(doc. 80) filed by Defendant the City of Huntsville (hereinafter "City").    As
administratrix of the estate of Wallace Mitchell, Plaintiff, Janice Eason, filed this 42
U.S.C. § 1983 lawsuit for unconstitutionally excessive use of deadly force.    All
claims in Eason's Complaint arise out of the fatal shooting of Wallace Mitchell by
Officer Williams on April 17, 1998.  Following the Eleventh Circuit's decision in this
case affirming, in part, and vacating, in part, the District Court's previous summary
judgment rulings, the only remaining claim against the City is  a state law wrongful
death claim against the City of Huntsville.[1]  The issues raised in the City's  motion

---

[1] *See Janice Eason v. City of Huntsville, et al.,* No. 00-H-0969 (N.D. Ala., June 17,
2002)(Hancock, J.) (order granting summary judgment on section 1983 claims and declining

have been briefed by both parties and are now ripe for decision.  Upon full consideration of the legal issues and arguments presented, the City's Motion for Partial Summary Judgment is due to be **GRANTED**.

### Procedural History

As administratrix of the estate of Wallace Mitchell, Janice Eason, Mitchell's sister, filed this action under 42 U.S.C. § 1983 against Huntsville Police Officers Chet Williams, John Hollingsworth, and Cathy Ingram, the City of Huntsville, and Huntsville Police Chief Compton Owens.  The suit alleged violations of Mitchell's First, Fourth, Fifth, and Fourteenth Amendment rights based on the alleged excessive use of force against Mitchell, and included a state law wrongful death claim against the City of Huntsville under Alabama's Wrongful Death Act.  By Order entered June 8, 2000 (doc. 9), this Court dismissed all claims against the three officers in their official capacities.  Each of the defendants then moved for summary judgment as to all the remaining claims.

After briefing, the Court concluded that there was no dispute of material facts and granted summary judgment to each of the defendants as to all § 1983 claims alleged in the complaint.  Because any possible § 1983 liability against the City of

---

supplemental jurisdiction over state law wrongful death claim), *aff'd in part and vacated in part* by *Janice Eason v. City of Huntsville, et al.*, No. 02-13519 (11th Cir. Sept. 16, 2003).

2

Huntsville and Chief Owens for failure to train or for maintaining an unconstitutional policy was contingent on an actual constitutional violation and this Court had concluded that no such violation had occurred, the Court also granted summary judgment in favor of the City of Huntsville and Owens.  With respect to the state law wrongful death claim against the City of Huntsville, the Court declined to exercise supplemental jurisdiction, and dismissed that claim without prejudice pursuant to 28 U.S.C. § 1367(c).

By Order entered September 16, 2003, the United States Court of Appeals, Eleventh Circuit, vacated the Court's grant of summary judgment with respect to the Fourth Amendment excessive force claim against Officer Williams and the Court's dismissal of Eason's state law wrongful death against the City of Huntsville, which relied on 28 U.S.C. § 1367(c)(3).[2]  In all other respects, the Court's decision was affirmed.  The case was then remanded for further proceedings.

Following remand, the City of Huntsville has moved for summary judgment on Plaintiff's state law wrongful death claim.

The City's motion for partial summary judgment is directed to Eason's allegations of failure to train and supervise co-defendant Officer Chet Williams. The

---

[2]"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if …the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

motion is based on the grounds that: (1) there is no cause of action available against individual supervisors for wrongful supervision and training and, consequently, the City can have no vicarious liability for such actions under § 11-47-190, *Code of Alabama* (1975); (2) the supervisory officials on whose conduct the claims would be based would be entitled to discretionary function immunity and, therefore, the City can have no vicarious liability arising out of their actions; and (3) the City itself would be entitled to discretionary function immunity under § 6-5-338(b), *Code of Alabama* (1975).

### **Relevant Facts**

At all times relevant to the shooting of Wallace Mitchell, Officer Chet Williams was employed as a Huntsville police officer.

At the time of the of the incident made the basis of this lawsuit, the City had a policy, practice, and custom in place regarding  the use of [excessive] force by its police officers. (Exh. Q to Joint Evidentiary Submission Filed March 1, 2002, in Support of Defendants' Motions for Summary Judgment [Owens Aff. ¶ 2]).

In this regard, the City of Huntsville Police Department had at the time of the incident, a formal written policy in effect prohibiting the use of excessive force by its police officers. (Exh. Q [Owens Aff. ¶ 3]).

The policy in effect on April 17, 1998, is contained in Huntsville Police

Department Written Directive 101.13, entitled "Use of Force." (Exh. Q [Owens Aff.

¶ 3 and Exhibit "1" attached thereto]).  That directive provides in pertinent part as

follows:

> Sworn and Detention Personnel will use only the degree of
> force necessary to accomplish lawful objectives. Nothing
> in this written directive will constitute justification for
> reckless or criminally negligent behavior amounting to an
> offense against persons.

(Exh. Q [Owens Aff. ¶ 3, and ¶ 2 on page 1 of Exhibit "1" attached thereto]).

> ***
> Force may be used as reasonably necessary to lawfully...
> [o]vercome  resistance or enforce compliance."  (Exh. Q
> [Owens Aff. ¶ 3 and ¶ 7(A) on page 2 of Exhibit "1"
> attached thereto]).
> ***
> Officers will exert only the degree of force necessary to
> effect the arrest or compliance with lawful orders; more
> will be considered excessive force.

(Exh. Q [Owens Aff. ¶ 3 and ¶ 7(C) on page 2 of Exhibit "1" attached thereto]).

Written Directive 101.13 also sets out the following "Force Continuum"
to be used by Huntsville Police officers in responding to situations which they may
encounter:

> ***
> D.    The 'Use of Force Continuum', as defined herein
> and taught in the Huntsville Police Academy, will be the
> measure by which all Officers will gauge the degree of
> force they apply in a given situation. If circumstances
> allow, Officers should apply force in escalation from
> minimum to maximum on the "Use of Force Continuum":

1.     FIRST STAGE (Minimum): Officer's Presence

    a.     Proper uniform neatly worn
    b.     Deportment which commands respect

2.     SECOND STAGE: Verbal Commands

    a.     Communication skills
    b.     Whenever possible, using "mind over muscle"

3.     THIRD STAGE: Empty Hand Techniques (chance of injury possible)

    a.     OC: Oleoresin Capsicum Aerosol Spray.

    b.     SOFT HAND: Open hand control; grip control; Pressure Point Control Tactics – non-striking techniques.

    c.     BATON RESTRAINT TECHNIQUE: Use of the baton as a restraint tool.

    d.     HARD HAND: Hand strikes; punching movements; Pressure Point Control Tactics – striking techniques; handcuffing techniques where injury is caused due to handcuffing. (The simple act of applying handcuffs to a prisoner does not constitute a use of force.)

4.     FOURTH STAGE: Intermediate & Impact Weapons

    a.     Police Canine: Use of police canine if present and available on the scene;

        b.      BATON: Any strike offensive and/or defensive in nature; or

        c.      Chemical agents (other than "OC") when authorized.

      5.      FIFTH STAGE (Maximum): Deadly Force

        a.      Firearms; or

        b.      Intermediate weapons applied as deadly force.

(Exh. Q [Owens Aff. ¶ 3 and ¶ 7(D) on pages 2-3 of Exhibit "1" attached thereto]).

Paragraphs 8-12 of Directive 101.13 provides detailed instructions regarding the amount of force to be used at each level of the use of force continuum set out above. (Exh. Q [Owens Aff. ¶ 3 and ¶¶ 8-12 on pages 4 through 9 of Exhibit "1" attached thereto]).

The City of Huntsville Police Department Use of Force Policy is in compliance with customary and generally accepted law enforcement practices. (Exh. AA [Kiker Aff. ¶ 4 and pages 9-10 of Tab 2 attached thereto]).

The Huntsville Police Department's Use of Force Policy meets the standards required for accreditation of police departments by the Commission on Accreditation of Law Enforcement Agencies (CALEA). (Exh. AA [Kiker Aff. ¶ 4 and pages 9-10 of Tab 2 attached thereto]).

7

The Huntsville Police Department's Use of Force Policy also meet the standards suggested in the International Chiefs of Police Model Policies. (Exh. AA [Kiker Aff. ¶ 4 and pages 9-10 of Tab 2 attached thereto]).

At the time of the incident, the City of Huntsville issued a copy of its current Use of Force policy to each new police officer hired into the department. (Exh. Q [Owens Aff. ¶ 3]).

Officer Williams had, prior to April 17, 1998, received and read Written Directive 101.13 described above. (Exh. N [Williams Aff. ¶ 3]).

The City maintains the Internal Affairs Division of the City of Huntsville Police Department (hereinafter "Internal Affairs") in order to investigate citizen complaints of excessive force and other types of police misconduct. (Exh. S [Morris Aff. ¶¶ 3 and 4]).

Prior to the inception of this lawsuit, there is no record of any complaints filed against Officer Chet Williams alleging the use of excessive force . [Morris Aff. ¶¶ 3 and 4]).

At the time Officer Williams was hired by the City as a police officer, the City utilized extensive screening procedures for screening its officers. (Exh. Q [Owens Aff. ¶ 4]).

Prior to being hired, a background investigation of Officer Williams was

conducted, including an investigation by the Federal Bureau of Investigation and Alabama Bureau of Investigation, to determine whether the applicant had a history of arrests and convictions. (Exh.Q [Owens Aff. ¶ 4]).

As part of the hiring process, the City contacted the applicant's past and present employers, references, and others who might have relevant information regarding the applicant's background. (Exh. Q [Owens Aff. ¶ 4]). In addition, a psychological profile was prepared for each applicant. (Exh. Q [Owens Aff. ¶ 4]).

The pre-hiring investigation of Officer Williams revealed no information indicating that Officer Williams would be predisposed to using excessive force in the course of performing his duties as a City of Huntsville Police Officer. (Exh. Q [Owens Aff. ¶4]).

The City requires all police officer candidates to complete a police officer training program at the City of Huntsville Police Academy (the "Academy"). (Exh. W [Giles Aff. ¶ 3]).

Prior to April 17, 1998, the date of the incident, Officer Williams completed the program and graduated from the Academy. (Exh. W [Giles Aff. ¶¶ 4 and Exhibit "1," attached thereto]; Exh. N [Williams Aff. ¶ 3].

The duration of the Academy session which Officer Williams attended and graduated from was July 15, 1985 through November 8, 1985.   This session

consisted of approximately 660 hours of training. (Exh. W [Giles Aff. ¶ 4 and Exhibit "1" attached thereto]; Exh. N [Williams Aff. ¶ 4]).

At that time, the regulations established by the Alabama Peace Officers' Standards and Training Commission required only approximately 480 hours of training. (Exh. W [Giles Aff. ¶ 3]).

During this session, Officer Williams was trained in the law and techniques of making arrests, as well as in the use of defensive tactics. (Exh. W [Giles Aff. ¶ 3]; Exh. N [Williams Aff. ¶ 4]).

The training included instructions on the basic use of force policy and the force continuum utilized by the City. (Exh. W [Giles Aff. ¶ 3]; Exh. N [Williams Aff. ¶ 4]).

Subsequent to graduation, each officer candidate is assigned a field training officer who rides on patrol with the candidate for a period of approximately twelve weeks to assess the candidate's fitness as a police officer, and to further train the candidate. (Exh. W [Giles Aff. ¶ 5]).

At the end of the evaluation period, the field training officer issues a final recommendation as to whether the candidate is fit to patrol alone as an officer. (Exh. W [Giles Aff. ¶ 5]).

Officer Williams performed successfully during his evaluation period, and advanced to become a full-duty Huntsville police officer. (Exh. W [Giles Aff. ¶ 5];

Exh. N [Williams Aff. ¶ 5].

Huntsville police officers receive a minimum of twelve hours of continuing education training each year at the Academy. (Exh. W [Giles Aff. ¶ 6]).

Upon assuming the responsibilities of a full-time police officer, Officer Williams was assigned a supervising officer. (Exh. T [Tielking Aff. ¶ 2]).

At the time of the incident, Sergeant Ray Tielking was serving as Officer Williams's supervisor. (Exh. T [Tielking Aff. ¶ 2]).

Tielking, as supervising officer for Officer Williams and other City of Huntsville police officers, was especially sensitive to and concerned with the potential use of force by police officers. (Exh. T [Tielking Aff. ¶ 5]).

At no time during Tielking's supervision of Officer Williams did he observe or was he otherwise made aware of any behavior by Officer Williams that indicated that Officer Williams would be prone to using excessive force in effectuating an arrest. (Exh. T [Tielking Aff. ¶ 5]).

## Analysis

In its opinion, the Eleventh Circuit vacated, in part, the district court's grant of summary judgment which included its decision to decline to exercise supplemental jurisdiction over Eason's Alabama state law wrongful death claim against the City

11

of Huntsville pursuant to 28 U.S.C. § 1367(c)(3).[3]  *See Janice Eason v. City of Huntsville, et al.,* No. 02-13519, pp. 23-24 (11th Cir., Sept. 16, 2003).  Pursuant to the Eleventh Circuit's Judgment, the state law claim was reinstated.

## A.   Wrongful Death In Alabama

The action for wrongful death is purely statutory as no such action existed at common law.  Grover S. McLeod, *Civil Actions at Law in Alabama* § 23.01, p. 257 (3d ed. 1998).  Alabama law provides:

> (a) A personal representative may commence an action and recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama, and not elsewhere, for the wrongful act, omission, or negligence of any person, persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, provided the testator or intestate could have commenced an action for such wrongful act, omission, or negligence if it had not caused death.

*Ala. Code* 1975 § 6-5-410(a).

## B.   Count Two

Count Two of the Complaint states the following:

> 25.    Plaintiff avers that as the direct, proximate and sole result of each and every one of the foregoing acts or omissions of the defendants, Wallace Mitchell died as a result of a shooting.  Plaintiff avers that the decedent's death was wrongful within the purview of

---

[3] "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if...the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. section 1367(c)(3).

Alabama's Wrongful Death Act.

26.   Plaintiff alleges that said death was proximately caused by the following culpable acts of the defendants, both separately and severally:

(a)   For that the defendant, City of Huntsville, by and through its agents and employees . . . ,

(I)   Failed to adequately train its officers involved in the events made the basis of this suit;

(ii)   Failed to properly fund their training program;

(iii)   Failed to take action prior to this event when similar circumstances had existed;

(iv)   Failed to adequately train and inform police as to the proper manner of handling a domestic dispute;

(vi)   Failed to properly train the defendant officers in the use of a deadly weapon [sic];

(vii)   Failed to establish policies, procedures, and guidelines which would have prevented the shooting of the plaintiff's decedent.

*Complaint*, at 8-9.

## C.   Municipal Liability[4]

Under Alabama law, the City's liability is limited to only negligence claims

---

[4] To the extent that Eason's Complaint can be interpreted to contain intentional or wanton wrongful training and supervision claims, those claims are barred by the language of section 11-47-190, which limits potential liability of municipality to claims grounded in negligence.  Section 11-47-190, *Code of Alabama*.

under Ala. Code § 11-47-190.[5]  *See Roberts v. City of Geneva*, 114 F. Supp. 2d 1199,

1213 (M.D. Ala. 2000) ("[Under § 11-47-190], a city's liability is limited to

negligence based claims only."); *City of Prattville v. Post*, 831 So. 2d 622, 627, n. 7

(Ala. Civ. App. 2002) ("Section 11-47-190, Ala. Code 1975, limits monetary damages

against a municipality to those claims alleging negligence.").

**D.**      **The City's Position**: **Wrongful Death - Failure to Train and Supervise**

In its motion, the City avers that it can have no liability for the tort of negligent

supervision as a matter of law.  The analysis of any liability on the part of the City for

---

[5]That section reads:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured. However, no recovery may be had under any judgment or combination of judgments, whether direct or by way of indemnity under Section 11-47-24, or otherwise, arising out of a single occurrence, against a municipality, and/or any officer or officers, or employee or employees, or agents thereof, in excess of a total $100,000 per injured person up to a maximum of $300,000 per single occurrence, the limits set out in the provisions of Section 11-93-2 notwithstanding.

Ala. Code 1975 § 11-47-190.

14

a negligent supervision claim must commence with § 11-47-190, *Code of Alabama* (1975).  Under Alabama law, a municipality has only limited liability.  "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty..."  *Id.*  With the exception of its duty to the public arising from an obligation to remedy street defects, the sole basis of liability for a municipality is vicarious liability arising from the alleged wrongful conduct of the municipality's agents, employees, or officers. *See City of Lanett v. Tomlinson,* 659 So.2d 68, 70 (Ala. 1995)(quoting § 11-47-190, *Code fo Alabama* (1975)).  In the event that an officer or employee of the municipality does not have liability, the city can have no liability arising out of his or her actions. *See City of Bayou La Batre v. Robinson,* 785 So.2d 1128, 1131 (Ala. 2000); *Gore v. City of Hoover*, 559 So.2d 163, 165 (Ala. 1990).

In *Ott v. City of Mobile*, a case with facts and issues somewhat analogous to those in the case presently before the Court, a police officer was alleged to have used excessive force against a citizen.  In addition to the claims brought under § 1983 for excessive force used by the police officer, the plaintiff in *Ott* alleged an Alabama state law tort claim against the City of Mobile, the Mobile Police Chief, and the

individual police officer.  The claim brought against the City of Mobile which is relevant to the case presently before the Court  was  for negligent supervision.  The *Ott* court held that because Alabama cities are liable for tort only by virtue of vicarious liability for the acts of its agents, before a claim for negligent supervision could be maintained against the City, the plaintiff first had to establish that such a claim existed under Alabama law:

> Municipal liability under section 11-47-190 is based on the doctrine of respondeat superior [citation omitted].  For the employer to be liable under that doctrine, the employee must first be liable for a tort.  If the agent is not liable for any tort, the principal is also absolved.  *Latham v. Redding*, 628 So.2d 490, 495 (Ala. 1993).  Thus, to survive a motion for summary judgment, a plaintiff must first show that a species of tort exists for which the employee may theoretically be held liable.  In this case, the plaintiff must show that Alabama law recognizes a cause of action against a supervisory employee for the negligent training or supervision of a subordinate.

*Ott*, 169 F. Supp.2d at 1314.  Just as in *Ott*, the Plaintiff in the present case  has failed to identify any authority for the proposition that such a cause of action exists. Therefore, in accordance with the holding of *Ott*, this Court finds that a cause of action against a City for failure to supervise or train does not exist under Alabama law.[6] *Id.* at 1314-15.

---

[6]Alabama law is clear that the tort of negligent supervision or training requires as an element the existence of a master-servant relationship.  "We are mindful of...the fact that this Court recognizes a cause of action against the master based upon the incompetence of the servant."  *Ott,* at 1315 (citing *Lane v. Central,* 425 So.2d 1098, 1100 (Ala. 1983).  A supervisor is not the master of a subordinate, nor is the subordinate the servant of the supervisor; rather, as

In response to the City's argument, Eason attempts to distinguish *Ott* by stating that "the issue in *Ott* was for the negligent hiring, retention, and supervision of an officer." *See Pla. Opposition Brief* at 11. However, it is quite evident to the Court that it is impossible to distinguish *Ott* in any significant way which would have any outcome determinative effect on the case presently before the Court. First, Eason wrongly asserts that "the issue for *Ott* was for the negligent hiring, retention, and supervision of an officer" whereas, the issue in the present case is that the City failed to properly train its employees. *See Pla. Opposition Brief* at 12. In fact, not only does *Ott* stand for what the City contends that it stands for, but, in footnote twelve of *Ott*, the Court states, "[t]he plaintiffs have thereby abandoned the negligent hiring and retention aspects of Count Four." This is relevant because the only remaining aspect of Count Four (of *Ott*) is the allegation of negligent supervising and training of a police officer against the City.

Next, Eason contends incorrectly that *Ott* does not hold that a municipality is immune from liability for failure to train its officers. However, contrary to Eason's assertion otherwise, the Court in *Ott* plainly held that a "cause of action against city [of Mobile] for failure to supervise did not exist under Alabama Law." *Ott,* 169 F.

---

Alabama cases make plain, the status of "master" is restricted to one who is actually or essentially the employer of the servant. *Id.*

Supp.2d at 1314-15. In fact, the Court which decided *Ott* included an in-depth analysis of whether, under Section 11-47-190, a municipality could be held liable for negligent supervision and training of an officer. *Id.* Accordingly, summary judgment against Eason for the claim of negligent training and supervision is due to be **GRANTED** on the ground that a cause of action against a City for failure to supervise or train does not exist under Alabama law.

E.   **Discretionary Function Immunity**[7]

In its motion, the City contends that the claims alleged by Eason against the City are barred by discretionary function immunity.  In response to the City's contention that it is entitled to discretionary function immunity, Eason asserts that the City incorrectly characterizes the training of employees as a discretionary function. *See Pla. Brief* at 15.  Eason asserts that the "restated formulation of state-agent immunity developed by the Alabama Supreme Court in *Ex Parte Cranman*, 792 So.2d 395 (Ala. 2000), ...does not mention training as a function that falls under this immunity." *Id*.  The Court disagrees with Eason's assertion.  In *Howard v. City of Atmore*, the plaintiff contended that the Atmore Police Chief and the City of Atmore were not entitled to discretionary function immunity because "training" was not

---

[7] Although summary judgment is appropriate on the issue of negligent training and supervision, the Court will briefly discuss the issue of discretionary immunity as it applies to the case presently before the Court.

18

included in the restated formulation of state-agent immunity as set forth by the Alabama Supreme Court in *Cranman*.  *Howard v. City of Atmore*, 887 So. 2d 201, 210 (Ala. 2003).  The Court in  *Howard* specifically rejected the contention that training was not included as a discretionary function under the *Cranman* restated formulation of state-agent immunity:

> Once again, *Howard* reads *Cranman* too rigidly, "[T]he situations listed in subparagraphs (2)(a)-(d) of the *Cranman* immunity rule are expressly only 'examples' of the general principle stated in paragraph (2) itself." *Ryan v. Hayes*, 831 So.2d 21,31 (Ala. 2002).  Category (2)(a)-(d) includes "training," as well as "supervising."

*Id*.  Clearly, Eason was incorrect in her assertion, and "training" as well as "supervising" are specifically included as discretionary functions under the *Cranman* formula.  Accordingly, summary judgment against Eason for the claim of negligent training and supervision is due to be **GRANTED** on the ground that the City is entitled to discretionary function immunity for any claims based on negligent training and supervising.

## Conclusion

For the foregoing reasons, summary judgment against Eason for the claim of negligent training and supervision is due to be **GRANTED,** in favor of the City, on the ground that a cause of action against a City for failure to supervise or train does not exist under Alabama law; and, in the alternative, summary judgment against

Eason for the claim of negligent training and supervision is due to be **GRANTED,** in favor of the City, on the ground that the City is entitled to discretionary function immunity for any claims based on negligent training and supervising.

A separate **ORDER** will be entered.

**DONE** and **ORDERED** this 13th day of June, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge