FILED
2007 Jun-18 PM 11:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| JANICE EASON, as Administratrix of the Estate of WALLACE MITCHELL, deceased, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action Number: 5:00-cv-969-VEH |
| CITY OF HUNTSVILLE, *et al.*, ) ) | |
| Defendants. ) | |

---

### REPLY BRIEF OF DEFENDANT OFFICER CHET WILLIAMS
### IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT

---

MICHAEL L. FEES
C. GREGORY BURGESS
NORI D. HORTON
**FEES & BURGESS, P.C.**
213 Green Street
Huntsville, Alabama 35801
Telephone Number: (256) 536-0095
Facsimile Number: (256) 536-4440

**Attorneys for Defendant Officer Chet Williams**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JANICE EASON, as Administratrix of the Estate of WALLACE MITCHELL, deceased, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| CITY OF HUNTSVILLE, *et al.*, | ) ) |
| Defendants. | ) ) |

Civil Action Number: 5:00-cv-969-VEH

**REPLY BRIEF OF DEFENDANT OFFICER CHET WILLIAMS
IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Defendant Officer Chet Williams hereby submits this reply brief in support of his pending motion to enforce settlement agreement in this action:

**I.   RESPONSE TO EASON'S ADDITIONAL DISPUTED FACTS**

1-3.   Officer Williams lacks sufficient information to admit or deny these assertions, and states they are immaterial in any event.

4-5.   Admitted.

6.   Admitted that Eason met with her former lawyer, Gordon Pate, on September 19, 2006, to specifically discuss fully settling this case for $30,000.00. (See Doc. 141, Ex. D, Pate ltr of 11/20/06).

7. Admitted, as the proposed settlement paperwork was not in existence at the time of the September 19 meeting. In fact, it was not forwarded to Mr. Pate for review and approval until a month and a half later on November 9, 2006. (See Doc. 128, Ex. A, Burgess Aff., ¶ 10 and Tab 6).

8. Officer Williams lacks sufficient information to admit or deny these assertions, but nonetheless can admit that Mr. Pate could not have discussed the proposed settlement paperwork with Eason at their September 19 meeting because he did not receive it until a month and a half later on November 9. (See Doc. 128, Ex. A, Burgess Aff., ¶ 10 and Tab 6).

9. Officer Williams lacks sufficient information to admit or deny these assertions, and states they are immaterial in any event.

10. Disputed that Eason did not authorize Mr. Pate to offer to fully settle this case for $30,000.00. (See Doc. 141, Ex. D, Pate ltr. of 11/20/06) ("We met together on September 19th, over two months ago. At that time you made it clear to me that you were willing to settle the case under all the circumstances for $30,000.00. In reliance upon that, I notified defendants of that fact."). Officer Williams lacks sufficient information to admit or deny the remaining factual assertions, and states they are immaterial in any event.

11. Officer Williams lacks sufficient information to admit or deny these assertions, and states they are immaterial in any event.

12-15. See response *supra* at ¶ 10.

16. Officer Williams lacks sufficient information to admit or deny these assertions, and states they are immaterial in any event.

17-18. See response *supra* at ¶ 10.

19. Disputed as unsupported by Eason's cited evidentiary material and contradicted by other evidence of record. (See Doc. 138, Ex. A, Eason Aff., ¶ 8 [stating only, "At no time did I ever instruct Mr. Pate to *accept this offer*."]; Doc. 141, Ex. D, Pate ltr. of 11/20/06 [confirming settlement authority for $30,000.00]).

## II.   ARGUMENT

### A. Eason Failed to Create Fact Issue Concerning Mr. Pate's Settlement Authority, Thus Obviating Need For Evidentiary Hearing.

Eason has not met her burden of demonstrating a need for an evidentiary hearing on the issue of Mr. Pate's settlement authority. The Court made clear at the outset that it was treating Officer Williams' motion to enforce settlement agreement like a summary-judgment motion, warning Eason as follows: "[I]f Ms. Eason fails to adequately oppose Officer Williams's intial brief, then the court may declare that the facts in the affidavits and/or documents supporting Officer Williams's brief are

established as true and that there is no genuine issue of material fact in dispute on the issue of 'whether an enforceable settlement agreement exists' between the parties." (Doc. 123, p. 2). Furthermore, as the case law that Eason cited in her own opposition teaches, "an attorney of record is presumed to have his client's authority to compromise and settle litigation"; consequently, "affirmative proof" of the attorney's lack of settlement authority is necessary to set aside the attorney's settlement of his client's case. (Doc. 139, p. 9) (citing Alexander v. Burch, 2006 WL 2216768, *4 (Ala. Aug. 4, 2006) (internal citations omitted).

Nowhere in Eason's evidentiary materials is there "affirmative proof" that Mr. Pate lacked authority to offer to fully settle this case for $30,000.00, as he undisputedly did in his September 20 letter. (Doc. 128, Ex. A, Burgess Aff., Tabs 2-3). Instead, Eason cleverly dodges the issue altogether, offering evasive affidavit testimony: "At no time did I ever instruct Mr. Pate to *accept* [defendants'] *offer* [of $30,000.00]. (Doc. 138, Ex. A, Eason Aff., ¶ 8) (emphasis added). Whether Eason authorized Mr. Pate to accept a $30,000.00 offer from defendants is a non-issue because no such offer was ever made. As Eason well knows, the only formal settlement offer in the history of this case was the written offer *she* made, through Mr. Pate, on September 20. Her testimony about never authorizing Mr. Pate to accept an offer from defendants is therefore a distraction to the Court. That is to say, it is

architected to give a truthful statement on an inconsequential point while at the same appearing to create a trialworthy issue of material fact.

So, why would Eason give impertinent testimony rather than speak directly to the real question before Court (i.e., whether Mr. Pate was authorized to make the September 20 offer), particularly now that she has the opportunity – actually, the obligation – to do so? The answer is obvious: the whole truth spells certain defeat for her position. In short, because Eason has failed to adequately respond to Officer Williams' brief by affirmatively stating that Mr. Pate lacked authority to make the September 20 offer, there is no genuine issue of material fact requiring the Court to conduct an evidentiary hearing as a prerequisite to enforcement of the parties' settlement agreement.

**B.    Eason's Attack on Formation of Settlement Agreement Is Flawed.**

Eason's fallback position – no settlement agreement ever formed – borders on the frivolous. Essentially, Eason argues there was never any acceptance of the September 20 offer of $30,000.00. Instead, she argues that the proposed settlement agreement transmitted to Mr. Pate on November 9 operated as a rejection and counteroffer by defendants because it allegedly included "new conditions on payment [of] the $30,000." (Doc. 139, p. 12). Simply put, Eason is wrong on the facts and wrong on the law.

5

To begin, Eason conveniently overlooks that the only settlement contingency was the formal approval by the Huntsville City Council of the $30,000.00 payment to Eason. This was made crystal clear to Eason the very day after receiving the September 20 offer in a letter faxed by counsel for Officer Williams to Mr. Pate, which read in part:

> As a reminder, settling a case with the City of Huntsville and its employee is not as simple as requesting a check be cut. The proposed settlement will need to be formally approved by the City Council at a regularly scheduled public meeting. We are making this matter a top priority, however, and will expedite the process as best we can. . . .

(Doc. 128, Ex. A, Burgess Aff., Tab 3). Eason also ignores the fact that this lone contingency was satisfied on October 26 when the Huntsville City Council formally considered and approved the $30,000.00 settlement at a public meeting. (Doc. 128, Ex. A, Burgess Aff., ¶ 8; Ex. B, Joffrion Aff., ¶ 7; and Ex. C, Hagood Aff., Tabs 1-3). On these facts, there is no credible argument that the September 20 offer was not accepted by defendants. To the contrary, "acceptance" occurred the moment the Huntsville City Council approved the $30,000.00 settlement on October 26.[1] This acceptance was unqualified, and mirrored the September 20 offer. As a result, a

---

[1] The acceptance was communicated on the following day, October 27, when Eason was notified of the Huntsville City Council's approval of the settlement in a letter from counsel for Officer Williams to Mr. Pate. (Doc. 128, Ex. A, Burgess Aff., Tab 5).

settlement "contract" was formed, the material terms of which were payment of $30,000.00 to Eason in full settlement of the case.

But even beyond the fact that acceptance of the September 20 offer occurred as early as October 26, Eason's argument that the proposed settlement paperwork transmitted to Mr. Pate on November 9 was tantamount to a rejection and counteroffer lacks merit in any event. Contrary to Eason's contention, the boilerplate provisions of the proposed settlement agreement referenced in her opposition (i.e., denial-of-wrongdoing provision, confidentiality provision, and attorney's fees provision) were not "conditions" on the $30,000.00 payment to Eason. Rather, they were nothing more than mere suggested additional terms for inclusion in the formal settlement agreement that Eason could either accept or reject. Although this is obvious enough from the context, and consistent with the typical course of dealing among attorneys at the settlement stage of litigation, two factors plainly reinforce the point. First, Eason's check for $30,000.00 was delivered with the proposed settlement paperwork, thus positively evidencing that an existing settlement agreement was concretely in place at least as to the material terms. Second, there is no evidence whatsoever that the settlement was in any way conditional upon Eason's assent to any or all of the suggested additional terms found in proposed settlement agreement. Much to the contrary, the cover letter sent on November 9 to Mr. Pate

Case 5:00-cv-00969-VEH   Document 142   Filed 06/18/07   Page 9 of 12

expressly invited discussion of revisions to the proposed settlement paperwork.  (Ex. A, Burgess Aff., Tab 6).

Alabama law aptly supports this analysis.  In King v. Travelers Ins. Co., 513 So. 2d 1023 (Ala. 1987), the Alabama Supreme Court confronted an analogous situation where a plaintiff tried to back out of a settlement after the deal was struck.  In that case, plaintiff's counsel offered in writing to settle plaintiff's worker's compensation claim.  In a written response, defense counsel accepted the offer to settle on defendants' behalf for the amount proposed, but suggested an alternative payment schedule.  In rejecting plaintiff's argument that this response was not a valid acceptance by defendants but instead a rejection and counteroffer, the Alabama Supreme Court observed that "[m]ere inquiries or suggestions will not terminate an offer," and that a "mere inquiry as to whether one proposing a contract will alter or modify its terms does not amount to a rejection."  King, 513 So. 2d at 1026 (citing 1 WILLISTON ON CONTRACTS, § 79 at 263 (1957) and Jaybe Const. Co. V. Beco, Inc., 216 A.2d 208 (Conn. Cir. Ct. 1965), respectively).  Additionally, the Alabama Supreme Court remarked: "Just as 'requests' and 'suggestions' do not turn an otherwise absolute acceptance into a conditional one, so too they do not constitute counter offers."  Id. (quoting 1 Corbin, CONTRACTS, § 93, at 388-89 (1963)).

8

Applying this established law, the Alabama Supreme Court upheld enforcement of the settlement agreement over plaintiff's objection.  Id.[2]

As shown above, Eason's alternative argument that no settlement agreement was ever formed is factually and legally unsound.  Not only has Eason apparently forgotten that acceptance occurred when the Huntsville City Council approved the $30,000.00 settlement on October 26 (which acceptance was communicated to Eason on the following day), but her rejection / counteroffer theory turns contract law on its head.  Indeed, if the proposed settlement paperwork sent on November 9 operated as a rejection and counteroffer simply because it suggested additional terms for Eason

---

[2] The law in other jurisdictions is in accord with Alabama.  See, e.g., Alpha Venture/Vantage Properties v. Creative Carton Corp., et al., 370 N.W.2d 649, 652 (Minn. Ct. App. 1985) ("[R]equested modifications of the offer will not preclude the formation of a contract where it clearly appears that the offer is positively accepted, regardless of whether the requests are granted."); Costello v. Pet Inc., et al., 458 N.E.2d 790, 793 (Mass. App. Ct. 1984) ("[A] request for a modification accompanying an acceptance does not prevent formation of a contract where it is clear that the offeree intended to accept whether or not the modification was accepted."); McManus v. McManus, 440 N.Y.S.2d 954, 957 (N.Y. App. Div. 1981) ("If the acceptance of an offer is initially unconditional, the fact that it is accompanied with a direction or a request looking to the carrying out of its provisions, but which does not limit or restrict the contract, does not render it ineffectual or give it the character of a counteroffer.") (internal citations omitted); Skinner v. Stone, 222 S.W. 360, 361 (Ark. 1920) (holding that statement in letter "was not an additional and unagreed upon condition, but was a mere suggestion to expedite the consummation of a contract which the letter itself closed by accepting unconditionally appellant's offer to sell"); see also RICHARD A. LORD, *Williston on Contracts* § 6:16 (4th ed. 2007) ("Frequently an offeree, while making a positive acceptance of the offer, also makes a request or suggestion that some addition or modification be made.  So long as it is clear that the offeree is positively and unequivocally accepting the offer, regardless of whether the request is granted or not, a contract is formed.") (internal footnotes omitted); RESTATEMENT (SECOND) OF CONTRACTS § 61 (1981) ("An acceptance which requests a change or addition to the terms of the offer is not thereby invalidated unless the acceptance is made to depend on an assent to the changed or added terms.").

to accept or reject, then countless personal injury settlements are today at risk of repudiation at the whim of a disgruntled litigant (plaintiff or defendant) at any time before the last drop of ink on the final written settlement agreement has dried. Fortunately, as King and the other cited authorities illustrate, this is not the law.

### III. CONCLUSION

It is time for Eason's charade to end. The Court should therefore order Eason to comply with the agreed-upon global settlement of this case, that is, dismissal with prejudice of all claims as to defendants in exchange for payment of $30,000.00.

S/ C. Gregory Burgess
Michael L. Fees (ASB-4924-F51M)
C. Gregory Burgess (ASB-1519-R79C)
Nori D. Horton (ASB-5815-N30H)

**Attorneys for defendant Officer Chet Williams**

**OF COUNSEL:**

**FEES & BURGESS, P.C.**
213 Green Street
Huntsville, Alabama 35801
Telephone Number: (256) 536-0095
Facsimile Number: (256) 536-4440
E-mail: court@feesburgess.com

# CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of June, 2007, I electronically filed the foregoing with Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

BRIAN M. WHITE
**WHITE & OAKES LLC**
601 Johnston Street SE
Decatur, Alabama 35602

> *S / C. Gregory Burgess*
> C. Gregory Burgess