FILED
2007 Jul-16  PM 02:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JANICE EASON, as** | ) | |
| **Administratrix of the Estate of** | ) | |
| **Wallace Mitchell** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.:** |
| | ) | **5:00-cv-969-VEH** |
| **v.** | ) | |
| | ) | |
| **CHET WILLIAMS, individually and** | ) | |
| **in his official capacity as police** | ) | |
| **officer,** | ) | |
| | | |
| **Defendant.** | | |

## MEMORANDUM OF DECISION

### I.  INTRODUCTION

This case is before the court on remand from the Eleventh Circuit for the "limited purpose of determining whether an enforceable settlement agreement exists". (Doc. 116).   Officer Chet Williams ("Williams") asserts that an enforceable settlement agreement exists because Gordon Pate ("Pate"), attorney for Janice Eason ("Eason"), offered, by letter dated September 20, 2006, to settle the case against Williams for $30,000 and Williams and the City of Huntsville accepted the offer of settlement.  Eason asserts that no enforceable settlement agreement exists because Pate was not authorized to settle the case.  Alternatively, Eason asserts that, even if

Pate's letter is a settlement offer, Williams and the City of Huntsville did not accept that offer but rather responded with a counteroffer that contained new and material terms that had not been agreed to. Based upon the findings of fact and conclusions of law set forth below, the court determines that no enforceable settlement agreement exists.

## II. FINDINGS OF FACT[1,2]

1. On June 13, 2006, the court denied Williams's motion for summary judgment. (Docs. 100, 101).

2. On July 13, 2006, Williams interlocutorily appealed the court's June 13, 2006, decision denying his motion for summary judgment. (Doc. 110).

3. On September 19, 2006, Eason, accompanied by her sister, Dorothy Carter ("Carter"), met with Pate. No one else was present for the meeting. (Testimony of Eason; testimony of Carter; testimony of Pate).

---

[1] Williams filed with the court (doc. 119) a copy of all documents submitted by any party to the Eleventh Circuit on the issue of whether or not a settlement had been reached in this matter. Additionally, Williams (doc. 121) and Eason (doc. 120) advised the court that both additional briefing and an evidentiary hearing were needed. Williams submitted evidentiary material (doc. 128) and a brief (doc. 129). Eason submitted evidentiary material (doc. 138) and a brief (doc. 139). Williams filed supplemental evidentiary material (doc. 141) and a reply brief (doc. 142). An evidentiary hearing was held on July 9, 2007, at which time testimony under oath was taken and arguments were heard. The court has considered all such documents, testimony, and arguments.

[2] All of the facts found by the court are undisputed.

4.    At the meeting, Pate raised the possibility of settling the case against Officer Williams for $30,000.00.  (Testimony of Eason; testimony of Carter; testimony of Pate).

5.    On September 20, 2006, Pate wrote a letter to counsel for Williams that stated:

> "My clients [sic] have agreed to accept $30,000.00 in full settlement of all claims pending against Chet Williams. Please forward the necessary check and paperwork."

(Doc. 129, Tab 2; Testimony of Pate).

6.    There is no evidence of any writing signed by Eason agreeing to settle the case.

7.    When he wrote the letter on September 20, 2006, Pate believed that, at the meeting, Eason authorized him to settle the case.  He knows this because he would not have written the letter unless he had that belief.  However, he does not remember any specific statement or act of Ms. Eason that caused him to have that belief.  He took no notes of the meeting.  (Testimony of Pate).

8.    Eason, however, had a detailed recollection that she did not authorize Pate to settle the case.  (Testimony of Eason).

9.      Carter's testimony entirely corroborated Eason's testimony. (Testimony of Carter).

10.     Pate testified that, although he is sure he believed, on September 20, 2006, that he had been authorized to settle, when Eason says she did not authorize him to settle he believes her because she had always been "straight" with him.  (Testimony of Pate).

11.     Pate was mistaken in his belief that he had been authorized by Eason to settle the case.

### III.  ANALYSIS

Without a doubt, public policy favors the settlement of claims brought before the courts.  "Settlement agreements have always been a favored means of resolving disputes. When fairly arrived at and properly entered into, they are generally viewed as binding, final, and as conclusive of rights as a judgment." *Thomas v. Louisiana*, 534 F.2d 613, 615 (5th Cir. 1976) (footnotes omitted); *see also Sollek v. Laseter*, 126 Ga.App. 137, 190 S.E.2d 148 (1972).  This court has recognized before that it is a "well-settled rule that the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally."

*Florida Education Association, Inc. v. Atkinson*, 481 F.2d 662, 663 (5th Cir. 1973).[3]

---

[3] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding precedent in this Circuit).

### 1.    Under an application of Alabama Rule of Appellate Procedure 47, no enforceable settlement agreement exists.

The parties agree that Alabama law applies to the issue before this court. Alabama Rule of Appellate Procedure 47 governs the formation of settlement agreements while a matter is on appeal.  *Ex parte Sims*, 627 So. 2d 380 (Ala. 1993), *rehearing denied, on remand* 627 So. 2d 382, *cert. denied,* 510 U.S. 1012, 114 S. Ct. 603, 126 L. Ed. 2d 568.  Rule 47 reads:

> No private agreement or consent between the parties or their attorneys relating to the proceedings in any cause, shall be alleged or suggested by either against the other, unless the same be in writing and signed by the party to be bound thereby; provided, however, that agreements made in open court or at pretrial conferences are binding, whether such agreements are oral or written.[4]

Williams asserts that Rule 47 does not apply because the Alabama Rules of Appellate Procedure only apply to "appeals to the Supreme Court, the Court of Civil Appeals and the Court of Criminal Appeals, and proceedings on petitions for writs

---

[4] In *Bowman v. Integrity Credit Corp.*, 507 So. 2d 104, 106 (Ala. Civ. App. 1987), the Court of Civil Appeals of Alabama summarizes the Alabama Supreme Court's adoption of the definition of "open court" as follows:

> "...[T]he Court in *Anonymous* adopted the explanation of the term 'open court' stated by the New York court in the case of *In re Dolgin Eldert Corporation*, 31 N.Y.2d 1, 334 N.Y.S.2d 833, at 840, 286 N.E.2d 228 at 233.  Stated succinctly, 'open court' means a proceeding where there are formal entries made, if only in minutes or bench notes, to record the critical litigation events, so that transcript beyond dispute and fallibility of memory is available.  The court concluded in *Anonymous* that in a case where there is no record of the alleged agreement in the reporter's transcript, nor on the docket sheet, nor in the minute entry, the agreement does not fall within the rule."

or other relief which these judges are empowered to grant." *See* Ala. R. App. P. 1.

Hence, Williams argue, because this case was on appeal to a <u>federal</u> court at the time

that the alleged settlement agreement was created, Rule 47 does not apply.

Eason says Rule 47 is part of the common law of Alabama, and should apply

to any settlement that is alleged to have been entered into while the case is on appeal,

regardless of where the appeal is pending.  The court agrees with Eason.

In *Spurlock v. Pioneer Financial Services, Inc.*, 808 F. Supp. 782 (M.D. Ala.

1992), the district court was required to determine whether an enforceable settlement

agreement had been reached.  Applying Alabama law, the court held that "given the

plain meaning of the appellate rules and of the statute and given the holdings of

several cases decided by the state's highest court, it appears that <u>Alabama Code</u>

section 34-3-21 controls the making of settlement agreements which are entered into

*before the case is appealed.*" *Id.* at 784, *i.e.*, at the trial court level (emphasis added).

The court also stated, in dicta, that Ala. R. App. P. 47 would apply if the alleged

settlement were reached while the case was on appeal.  Clearly, any appeal that the

district court was referring to in *Spurlock* would be an appeal to a federal court.

Williams cites no authority (other than Ala. R. App. P. 1) for the proposition that a

federal appellate court should apply a <u>different</u> analysis than a state appellate court

would apply to determine a question of contract law merely because the case on appeal was in front of a federal, rather than a state, court.

Such a distinction would be inconsistent with authority, going back to the Rules of Decision Act,[5] as interpreted by *Erie Ry. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817 (1938), *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S. Ct. 1464 (1945), *Byrd v. Blue Ridge Elec. Co-Op*, 356 U.S. 525, 78 S. Ct. 893 (1958), and *Hanna v. Plumer*, 380 U.S. 460, 85 S. Ct. 1136 (1965), that, when deciding an issue of state substantive law, the federal court should apply the law that the state court would have applied if the matter had been before it.[6]

The district court's reasoning in *Spurlock* has since been adopted as a part of Alabama common law.  In *Cincinnati Insurance Companies v. Barber Insulation, Inc.*, 946 So. 2d 441, 449 (Ala. 2006), the Alabama Supreme Court stated:

> [Section 34-3-21] "govern[s] settlement agreements reached while the case is still at the trial level," and Ala. R. App. P. 47 "govern[s] settlement agreements reached while the matter is on appeal." *Ex parte Sims*, 627 So. 2d 380, 382 (Ala. 1993) (quoting *Spurlock v. Pioneer Fin. Servs., Inc.*, 808 F. Supp. 782, 783 (M.D. Ala. 1992)).

In the present case, the alleged settlement agreement was reached while the case was on appeal to the Eleventh Circuit.  There was no settlement agreement made

---

[5]  Section 34 of the Judiciary Act of 1789.  1 Stat. 92.

[6]  *See generally* 19 Wright, Miller & Cooper, Jurisdiction 2d §§ 4503 - 4504.

in open court, nor at a pretrial conference. Eason never signed a settlement agreement. The court finds that Ala. R. App. 47 applies and, therefore, no binding settlement agreement exists.

##### 2. Alternatively, under an application of <u>Alabama Code</u> § 34-3-21, no settlement agreement was reached.

Alternatively, if Rule 47 does not apply, <u>Alabama Code</u> § 34-3-21 (1975) applies and the court finds that Pate lacked the authority to enter into a settlement; therefore, no settlement exists. <u>Alabama Code</u> § 34-3-21 states "[a]n attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court." *See Alexander v. Burch*, WL 2216768, slip op. at 4 (Ala. 2006), where the Alabama Supreme Court required findings as to attorney's authority to settle plaintiff's claims; *Blackwell v. Adams*, 467 So. 2d 680, 684 (Ala. 1985), where Alabama Supreme Court stated "our cases have consistently held that whether an attorney has authority to bind his client by an agreement to settle the case by consent is a question of fact"; *Daniel v. Scott*, 455 So. 2d 30 (Ala. Civ. App. 1984) where court stated "An attorney cannot settle a client's action or claim or prejudice a client's rights without authorization from the client" (*quoting Crawford v. Tucker*, 258 Ala. 658, 663, 64 So. 2d 411, 416 (1953)).

No evidence or testimony established that Pate had his client's authority to settle. Indeed, Eason's testimony that she did not give Pate authority to settle is undisputed.[7] Therefore, this court finds that, under an application of <u>Alabama Code</u> § 34-3-21, no enforceable settlement agreement exists.

## IV. CONCLUSIONS OF LAW

Based upon the foregoing, this court concludes that no enforceable settlement agreement exists.[8] More specifically, under Alabama Rule of Appellate Procedure 47, no settlement agreement exists because no such agreement was signed by Eason, the party against whom enforcement is sought. Alternatively, under <u>Alabama Code</u> § 34-3-21, no settlement agreement exists because Pate lacked authority to settle.

**DONE** this the 16th day of July, 2007.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[7]As stated previously, Pate testified that he <u>believed</u> he had authority to settle, but he did not testify that Eason in fact authorized the settlement.

[8] In reaching this decision, the court does not find it necessary to reach Eason's alternative argument that Williams and the City of Huntsville's "acceptance" of her "offer" was not an acceptance but rather a counteroffer.